DONALD S. ENGEL (Bar No. 73617)
**ENGEL & ENGEL, LLP**
100 Island Drive
Palo Alto, CA 94301
(650) 325-3312 (telephone)
(650) 325-3317 (facsimile)

JEFFERSON K. LOGAN (Bar No. 136962)
ALEX M. WEINGARTEN (Bar No. 204410)
**FOX & SPILLANE LLP**
1880 Century Park East, Suite 1004
Los Angeles, California 90067
(310) 229-9300 (telephone)
(310) 229-9380 (facsimile)

*Attorneys for Counterclaim Defendant and Counterclaimant*
GEORGE CLINTON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NENE MONTES, an individual, | Case No. CV03-8955-R |
| Plaintiff, | [~~PROPOSED~~] **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| KAPLAN, KENEGOS & KADIN; et al., | |
| Defendants. | THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |
| RON BREMBRY; BRUCE PETERSON; RAYMOND SPRUELL, individually, d/b/a ASSOCIATION PARLIAMENT FUNKADELIC MEMBERS 73-81; FUNK MOB MUSIC, LLC; KAPLAN, KENEGOS & KADIN | |
| Counter-Claimants, | |
| vs. | |
| NENE MONTES; TERCER MUNDO, INC., CHARLY ACQUISITIONS LTD; GEORGE CLINTON; DOES 101-200, inclusive, | |
| Counter-Defendants. | |

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

| | |
|---|---|
| 1 | GEORGE CLINTON, |
| 2 | Cross-Claimant, |
| 3 | vs. |
| 4 | NENE MONTES; TERCER MUNDO, RON BREMBRY; BRUCE PETERSON; RAYMOND SPRUELL, individually, d/b/a/ ASSOCIATION PARLIAMENT FUNKADELIC MEMBERS 73-81; FUNK MOB MUSIC, LLC; KAPLAN, KENEGOS & KADIN, JERRY KAPLAN; JOAN KENEGOS; DAVID SCOTT KADIN; AND DOES 1-10, |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Cross-Claim Defendants. |

SCANNED

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

Fox & Spillane LLP

## Findings of Fact and Conclusions of Law

This cause came on for trial and the Court, Honorable Manuel L. Real presiding, having heard the testimony and examined the evidence, both oral and documentary, and considered the stipulations of the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact

1. Plaintiff Nene Montes ("Montes") defaulted and is no longer a party to the action. Counterclaimants Ron Brembry ("Brembry"), Bruce Peterson ("Peterson"), Ramond Spruell ("Spruell"), individually and doing business as Association Parliament Members 73-81 ("APF"), and Funk Mob Music, LLC (together the "APF parties") seek a judicial declaration that they own four master sound recordings by the musical group Funkadelic. Crossclaimant George Clinton ("Clinton") asks that the Court declare that he is the owner of the Masters. There are no remaining claims asserted by or against Defendant Kaplan, Kenegos & Kadin.

2. In or about 1974, Clinton entered into a recording agreement with Warner Bros. Records Inc. ("Warner Bros.") which granted to Warner Bros. ownership of any master recordings that he created pursuant to the agreement.

3. Clinton created the master recordings for the Funkadelic albums "Hard Core Jollies," "One Nation under a Groove," Uncle Jam Wants You" and "Electric Spanking of War Babies" (the "Masters"), and certain live performances of said albums, pursuant to the Warner Bros. agreement.

4. During the period 1979 through 1985, Montes acted as the manager or co-manager of Clinton and his companies, initially as an individual and after December, 1981, through a company he formed, Tercer Mundo, Inc. ("Tercer Mundo").

5. The APF parties assert that Clinton signed five December 11, 1981, assignments purporting to grant to Tercer Mundo all rights to the Masters and other

Fox & Spillane LLP

of Clinton's musical properties for no consideration stated in the documents or otherwise provided to Clinton. See Exhibit 1 for identification.

6. The APF parties purport to trace their chain-of-title from Tercer Mundo through grants from Tercer Mundo to the law firm Rosenfeld, Meyer & Susman ("RM&S") and grants from RM&S to them, followed by a public sale of a security interest in the Masters.

7. Clinton did not sign the December 11, 1981, assignments purporting to grant rights in the Masters to Montes' company, Tercer Mundo. See Exhibit 1 for identification.

8. In August, 1982, Clinton entered into a settlement agreement with Warner Bros. which provided, among other things, that Warner Bros. would relinquish its ownership and control of the Masters to Clinton if a third party distributor agreed in writing to pay to Warner Bros. a royalty of 5% of net sales of albums that embodied the Masters; the settlement agreement further provided that, when Warner Bros. had received a total of $283,333.34, the royalty payments would cease. Exhibit 2 in evidence.

9. The alleged agreement between Montes and Warner Bros. entitled "Override Agreement" does not comply with the override provisions of the August, 1982, settlement agreement because, among other things, Montes is not a third party distributor, and it was not presented to or accepted by Warner Bros. See Exhibit 4 for identification; Exhibits 104-107, 117, 118 in evidence.

10. When Clinton filed bankruptcy papers in 1984, he did not list the Masters as an asset in his bankruptcy papers because he believed in good faith that he did not own the Masters at that time. Exhibit 5 in evidence.

11. Clinton did not sign the October 27, 1984, affidavit purportedly notarized by a friend of Montes. See Exhibit 7 for identification.

12. In 1992, after meetings among Counterclaimants Brembry, Peterson and Spruell and Montes, said Counterclaimants became the sole shareholders of a

California corporation named Dementia, Inc., which had previously been wholly owned by Montes; the name of the corporation was changed to Association Parliament Funkadelic Members 73-81 and it was later reincorporated in California.

13. On September 18, 1992, Montes assigned to APF a 50% interest in the cash and other proceeds of a lawsuit by APF and Montes against Boladian (the Litigation), which would include claims that Montes owned the Masters and other musical properties. Exhibit 113 in evidence.

14. In or about 1992, Montes or Tercer Mundo entered into an agreement with Charly Records granting to Charly Records the right to distribute albums embodying the Masters outside of the United States.

15. On or about August 16, 1993, Tercer Mundo entered into an agreement with Priority Records, Inc. ("Priority"), a third party distributor, pursuant to which Priority agreed to distribute albums embodying the Masters and agreed to pay to Warner Bros. an override royalty in compliance with the August, 1982, settlement agreement between Clinton and Warner Bros. Exhibit 8.

16. Priority released such albums and made at least the initial payment of the override royalty to Warner Bros. See Exhibits 27 and 108 in evidence.

17. Clinton retained counsel in the United Kingdom and attempted, unsuccessfully, to enjoin the distribution by Charly Records of albums embodying the Masters and attempted, through an intermediary, to stop Priority from distributing albums embodying the Masters.

18. On July 31, 1995, APF assigned back to Tercer Mundo the 50% interest in the Litigation (Exhibit 115 in evidence); the APF parties contend that the July 31, 1995, assignment was procured by Montes through fraudulent representations that they would receive one-half of the proceeds of the Litigation, which they never received.

19. On or about September 21, 1995, Tercer Mundo granted to the law firm, Rosenfeld, Meyer & Susman ("RM&S"), which was representing APF and

Tercer Mundo as plaintiffs in the Litigation, all of Tercer Mundo's rights in the Masters, and masters of live performances of said albums, as security for an indebtedness of $275,000. Exhibit 15 in evidence.

20. On April 15, 1996, a Financing Statement was filed with the Secretary of State of California purporting to reflect an assignment from Tercer Mundo to RM&S of Tercer Mundo's rights in the Masters, and masters of live performances of said albums, as security for an indebtedness. Exhibit 16 in evidence.

21. In 1997, the Litigation was settled by an agreement that is under seal, which included a substantial payment by Boladian to Montes, none of which was ever paid to the APF parties.

22. On or about June 12, 2000, in an agreement settling a lawsuit previously brought by APF against RM&S and Tercer Mundo, APF purported to grant liens against the Masters to certain attorney lien holders, including a lien to RM&F in the amount of $1,400,000. Exhibit 14 in evidence.

23. In January, 2001, the federal court in Florida, in an action between Clinton and Arman Boladian ("Boladian"), determined that Boladian was the owner of certain copyrights in musical compositions written by Clinton, applying the doctrine of estoppel; that action did not involve the Masters. Exhibit 30 in evidence.

24. On April 25, 2001, a Financing Statement was filed with the Secretary of State of California purporting to reflect an assignment from RM&S to APF of RM&S's rights in the Masters, and masters of live performances of said albums. Exhibit 18 in evidence.

25. On or about May 24, 2001, the APF parties claim to have acquired title to the Masters, and masters of live performances of said albums following a public sale at which no one bid for the property. See Exhibits 20-23 in evidence.

26. At no time did Clinton state to any of the APF parties or anyone else that he had assigned his rights in the Masters to Tercer Mundo or Montes.

## Conclusions of Law

1. Tercer Mundo acquired no rights in the Masters pursuant to the alleged December 11, 1981, assignments, which Clinton did not sign.

2. The alleged "Override Agreement" between Montes and Warner Bros has no force or effect.

3. Clinton is not estopped from claiming his ownership rights in the Masters in this action because of the failure to list the Masters as assets in the 1984 bankruptcy proceedings.

4. Clinton did not assign or license his rights in the Masters to Montes, Tercer Mundo or anyone else.

5. As a result of compliance with the override terms of the August, 1982, settlement agreement between Clinton and Warner Bros. by virtue of the agreement in 1993 by Priority, a third party distributor, to distribute albums embodying the Masters and pay the override royalty to Warner Bros., Clinton acquired ownership of the Masters in 1993.

6. Neither Tercer Mundo nor Montes had any rights in the Masters to assign or license to anyone from 1981 to the present.

7. Laches, an equitable doctrine, is not a defense to Clinton's claims and Clinton is not guilty of laches, having attempted to prevent the unauthorized use of the Masters.

8. The purported grant of rights in the Masters, and masters of live performances of said albums, from Tercer Mundo to RM&F reflected in the September 21, 1955, agreement and the April 15, 1996, Financing Statement is invalid and of no force and effect.

9. The liens against and assignment of rights in the Masters purportedly granted by APF to RM&F pursuant to the settlement agreement dated June 12, 2000, and the Financing Statement dated April 25, 2001, are invalid and of no force or effect.

10. The APF parties acquired no rights in and to the Masters by virtue of the purported public sale of RM&F's rights.

11. The decision in the Florida litigation between Clinton and Boladian is not relevant to this action.

12. Clinton is not judicially estopped from claiming his ownership rights in the Masters in this action by virtue of the holding of the Florida District Court in the litigation between Clinton and Boladian, which dealt only with the ownership of certain copyrights in musical compositions that are not the subject of this action.

13. Clinton is the sole owner of all rights in and to the Masters, and the masters of live performances of said albums, and has been the sole owner of said rights since 1993.

Dated: June 8, 2005

**ENGEL & ENGEL, LLP**
Donald S. Engel

**FOX & SPILLANE, LLP**
Jefferson K. Logan
Alex M. Weingarten

By: _____
Alex M. Weingarten
*Attorneys for Counterclaim Defendant and Counterclaimant* GEORGE CLINTON

IT IS SO ORDERED
DATE June 17, 2005
U.S. DISTRICT COURT JUDGE

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Fox & Spillane LLP, 1880 Century Park East, Suite 1004, Los Angeles, California 90067. On June 9, 2005, I served the within documents:

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

☐ I sent such document from facsimile machine (310) 229-9380 on June 9, 2005. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (310) 229-9380 which confirms said transmission and receipt. The transmission was reported as complete and without error. A copy of the transmission report is attached to this Proof of Service. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth below.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

David Scott Kadin, Esq.
Kaplan, Kenegos & Kadin
9150 Wilshire Boulevard, Suite 175
Beverly Hills, California 90212

Leo Fasen, Esq.
Leo Fasen & Associates
9814 E Garvey Ave #12-A
El Monte, California 91733

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury in accordance with the laws of the United States of America that the foregoing is true and correct of my own personal knowledge, and that I am employed in an office of a member of the Bar of the Court at whose direction this service was made.

Executed on June 9, 2005, at Los Angeles, California.

_____
Yta Lewis

PROOF OF SERVICE